# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| BENNIGAN'S FRANCHISING COMPANY, LP, and BENNIGAN'S FRANCHISING COMPANY, LLC | § § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | |
| THE SWEET ONION, INC., THE PIXIE, INC., DOUGLAS LABELLE, BARTON LABELLE, KINSETH HOTEL CORPORATION, KINSETH HOSPITALITY COMPANY, INC., KINSETH HOSPITALITY II, L.C., KINSETH HOSPITALITY III, L.C., PEORIA HOTEL ASSOCIATES, L.C., BETTENDORF HOTEL ASSOCIATES, L.C., COLUMBIA HOTEL ASSOCIATES, LLC, BRUCE KINSETH, GARY KINSETH, LESLIE KINSETH, LINDA SKINNER, ALLAN ROSE, BOL, INC., RICHARD PASTOREK, ROBIN DELMER, BENNI-5461, L.P., BENNI-5462, L.P., BENNI_5848, L.P., BENNI_5849, L.P., BENNI_5434, L.P., AMER HAMMOUD, JRJ RESTAURANTS LIMITED, TYRONE NABBIE, JIHAD MAALI, MVP RESTAURANTS OF HOT SPRINGS, LLC, DR. VIJAY PATEL, MVP RESTAURANT OF LITTLE ROCK, INC., JAGDISH PATEL, ANIL B. PATEL PARTH V. PATEL, SHAMROCK MANAGEMENT GROUP OF GARY, L.L.C., FOOD IS FUN RESTAURANTS, INC., SHAMROCK MANAGEMENT GROUP OF HIGHLAND, LLC, SHAMROCK MANAGEMENT GROUP OF HOBART, LLC, FIRST BZE, LLC, SHAMROCK MANAGEMENT | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.  08-CV-2132-F |

GROUP OF WARSAW, LLC,                          §
SHAFFNER AND SHAFFNER                          §
ENTERPRISES, INC., LARRY BRISKI                §
JAMES HAWK, JAMES WIESER, RSB                  §
RESTAURANTS L.L.C., RICHARD K.                 §
ROSE, JAMES M. ROSE, JR.,                      §
PRIMROSE FOOD SERVICES OF                      §
CALIFORNIA, INC., SAIFUDDIN                    §
AHMAD, ALAM FAZLUL, KHALID                     §
MAHMUD, SAIFUL ISLAM, TRIAD                    §
ORGANIZATIONS CORP., JOSEPH                    §
GIMARO, SR., JOSEPH GIMARO, JR.,               §
CHRISTOPHER GIMARO, RAVI S.                    §
GODHIA, PINKY GODHIA, PINNACLE                 §
LIMITED PARTNERSHIP, BENN-BIRM,                §
INC., GEORGE ZUMBANO, SAMUEL                   §
A. CIPOLLONE, JR., ROGER N.                    §
HUGGINS, PAUL S. HOFFECKER,                    §
GREAT LAKES HOSPITALITY CORP.,                 §
CRAIG A. STARK, MARC VACCARRO,                 §
BRUCE NEVIASER, ROBERT STOEHR,                 §
BENN-BETH, INC., JAMIE J. SMITH,               §
STEPHEN F. FERRETTI, GRAND                     §
CANYON, LTD., DR. LOVE PAUL,                   §
CHANDER K. BUXANI, STERLING                    §
RESTAURANT MANAGEMENT GROUP §
LLC, JOHN D. DALEN, KEVIN J.                   §
BERTRAM, STEVEN M. GEHRTZ,                     §
and JAMES LOOMIS,                              §
                                               §
                Defendants.                    §

## PLAINTIFFS' FOURTH AMENDED COMPLAINT

PLAINTIFFS Bennigan's Franchising Company, L.P. ("Bennigan's") and Bennigan's

Franchising Company, LLC ("Bennigan's LLC"), invoke the jurisdiction of this Court under 28

U.S.C. § 1331 and, in accordance with Fed. R. Civ. P. 3, files their Fourth Amended Complaint

against Defendants, showing the Court the following:

## THE PARTIES

1.

Plaintiff Bennigan's is a Delaware limited partnership whose principal place of business is in Texas.  Bennigan's formerly licensed third parties to operate Bennigan's restaurants pursuant to written franchise agreements.  In May of 2009, Bennigan's transferred all of its assets and liabilities to its subsidiary Bennigan's LLC.

2.

Bennigan's LLC is a Delaware limited liability company whose principal place of business is in Texas.  Bennigan's LLC is a subsidiary of Bennigan's.  Pursuant to the transfer from Bennigan's in May of 2009, Bennigan's LLC became the licensor of Bennigan's restaurants.  Pursuant to Fed. R. Civ. P. 25, Bennigan's LLC is by operation of law the real party in interest in this litigation, and any judgment is binding on it.  At the request of the Defendants' counsel, Bennigan's LLC is being added as a Plaintiff to this matter.

3.

Defendant The Sweet Onion, Inc. ("Sweet Onion") is a Michigan corporation whose registered address is 405 South Mission Street, Mt. Pleasant, Michigan 48858.

4.

Defendant The Pixie, Inc. ("Pixie") is a Michigan corporation whose registered address is 405 South Mission Street, Mt. Pleasant, Michigan, 48858.

5.

Defendant Douglas LaBelle is a Michigan resident who may be served at 405 South Mission Street, Mt. Pleasant, Michigan, 48858.

6.

Defendant Barton LaBelle is a Michigan resident who may be served at 405 South Mission Street, Mt. Pleasant, Michigan, 48858.

7.

Defendant Kinseth Hotel Corporation ("Kinseth Hotel") is an Iowa corporation with its principal place of business located in North Liberty, Iowa. Kinseth Hotel may be served by service upon its registered agent, Bruce Kinseth, at 2 Quail Creek Circle, North Liberty, Iowa 52317.

8.

Defendant Kinseth Hospitality Company, Inc. ("Kinseth Hospitality") is an Iowa corporation with its principal place of business located in North Liberty, Iowa. Kinseth Hospitality may be served by service upon its registered agent, Bruce Kinseth, at 2 Quail Creek Circle, North Liberty, Iowa 52317.

9.

Defendant Kinseth Hospitality II, L.C. ("Kinseth Hospitality II") is an Iowa limited liability company with its principal place of business located in North Liberty, Iowa. Kinseth Hospitality II may be served by service upon its registered agent, Bruce Kinseth, at 2 Quail Creek Circle, North Liberty, Iowa 52317

10.

Defendant Kinseth Hospitality III, L.C. ("Kinseth Hospitality III") is an Iowa limited liability company with its principal place of business located in North Liberty, Iowa. Kinseth Hospitality III may be served by service upon its registered agent, Bruce Kinseth, at 2 Quail Creek Circle, North Liberty, Iowa 52317

11.

Defendant Peoria Hotel Associates, L.C. ("Peoria Hotel") is an Iowa limited liability company with its principal place of business located in North Liberty, Iowa. Peoria Hotel may be served by service upon its registered agent, Bruce Kinseth, at 2 Quail Creek Circle, North Liberty, Iowa 52317

12.

Defendant Bettendorf Hotel Associates, L.C. ("Bettendorf Hotel") is an Iowa limited liability company with its principal place of business located in North Liberty, Iowa. Bettendorf Hotel may be served by service upon its registered agent, Bruce Kinseth, at 2 Quail Creek Circle, North Liberty, Iowa 52317

13.

Defendant Columbia Hotel Associates, LLC ("Columbia Hotel") is a Missouri limited liability company with its principal place of business in Columbia, Missouri. Columbia Hotel may be served by service upon its registered agent, Robert M. Lemone, at 3316 Lemone Industrial Boulevard, Columbia, Missouri 65201.

14.

Defendant Bruce Kinseth is an Iowa resident who may be served at 420 Knowling Drive, Coralville, Iowa, 52241.

15.

Defendant Gary Kinseth is an Iowa resident who may be served with process at 420 Prairie View Lane, Mason City, Iowa 50401.

16.

Defendant Leslie Kinseth is an Iowa resident who may be served at 1416 W. 6th Avenue N, Clear Lake Iowa 50401 or 1823 North Shore Dr., Clear Lake, Iowa, 50401.

17.

Defendant Linda Skinner is an Iowa resident who may be served at 1123 College Road, Council Bluffs, Iowa.

18.

Defendant Allan Rose is a New York resident who may be served at 870 United Nations Plaza, 37B, New York, New York.

19.

Defendant BOL, Inc. ("BOL") is a Louisiana corporation with its principal place of business in Baton Rouge, Louisiana. BOL may be served by service upon its registered agent, Richard Pastorek, at 19431 Arcadian Shores Ave., Baton Rouge, Louisiana 70809.

20.

Defendant Richard Pastorek is a Louisiana resident who may be served at 19431 Arcadian Shores Ave., Baton Rouge, Louisiana 70809.

21.

Defendant Robin Delmer is a Louisiana resident who may be served at 19431 Arcadian Shores Ave., Baton Rouge, Louisiana 70809.

22.

Defendant Benni-5461, L.P. ("Benni-5461") is a Texas limited liability company with its principal place of business located in Round Rock, Texas.   Benni-5461 may be served by

serving its registered agent, Amer Hammoud at its principal place of business, 600 Round Rock West Dr., Ste. 404, Round Rock, Texas 78681.

23.

Defendant Benni-5462, L.P. ("Benni-5462") is a Texas limited liability company with its principal place of business located in Round Rock, Texas.  Benni-5462 may be served by serving its registered agent, Amer Hammoud at its principal place of business, 600 Round Rock West Dr., Ste. 404, Round Rock, Texas 78681.

24.

Defendant Benni_5848, L.P. ("Benni-5848") is a Texas limited liability company with its principal place of business located in Round Rock, Texas.  Benni-5848 may be served by serving its registered agent, Amer Hammoud at its principal place of business, 600 Round Rock West Dr., Ste. 404, Round Rock, Texas 78681.

25.

Defendant Benni_5849, L.P. ("Benni-5849") is a Texas limited partnership with its principal place of business located in Round Rock, Texas.  Benni-5849 may be served by serving its registered agent, Amer Hammoud at its principal place of business, 600 Round Rock West Dr., Ste. 404, Round Rock, Texas 78681.

26.

Defendant Benni_5434, L.P. ("Benni-5434") is a Texas limited partnership with its principal place of business located in Round Rock, Texas.  Benni-5434 may be served by serving its registered agent, Amer Hammoud at its principal place of business, 600 Round Rock West Dr., Ste. 404, Round Rock, Texas 78681.

27.

Defendant Amer Hammoud is a Texas resident who may be served at 600 Round Rock West Dr., Ste. 404, Round Rock, Texas 78671.

28.

JRJ Restaurants Limited ("JRJ Restaurants") is a Florida limited partnership whose principal place of business is Orlando, Florida. JRJ Restaurants may be served by service at its principal place of business, 3700 34th Street, Suite 302, Orlando, Florida 32805.

29.

Defendant Tyrone Nabbie is a Florida resident who may be served at 3700 34th Street, Suite 302, Orlando, Florida.

30.

Defendant Jihad Maali is a Florida resident who may be served at 3700 34th Street, Suite 302, Orlando, Florida.

31.

Defendant MVP Restaurants of Hot Springs, LLC ("MVP of Hot Springs") is an Arkansas limited liability company whose principal place of business is Hot Springs, Arkansas. MVP Restaurants of Hot Springs may be served by service upon its registered agent, Mihir Desai, 4319 Central Avenue, Hot Springs, Arkansas 71913.

32.

Defendant MVP Restaurant of Little Rock, Inc. ("MVP of Little Rock") is an Arkansas corporation with its principal place of business located in Little Rock. MVP Restaurant of Little Rock may be served by service upon its registered agent, Kenneth R. Chilton, 711 Military Road, Benton, Arkansas 72015.

33.

Defendant Jagdish Patel is an Indiana resident who may be served at 10327 Sandy Lane, Munster, Indiana 46321.

34.

Defendant Dr. Vijay J. Patel is an Indiana resident who may be served at 8700 North Cote Avenue, Munster, Indiana, 46321.

35.

Defendant Anil B. Patel is an Arkansas resident who may be served at 120 W. Pershing Blvd., North Little Rock, Arkansas 72114.

36.

Defendant Parth V. Patel is an Indiana resident who may be served at 8700 North Cote Avenue, Munster, Indiana 46321.

37.

Defendant Shamrock Management Group of Gary, L.L.C. ("Shamrock Group of Gary") is an Indiana limited liability company whose principal place of business is Gary, Indiana. Shamrock Group of Gary may be served by service at its registered address, 1982 Grant Street, Gary, Indiana 46404.

38.

Defendant Food Is Fun Restaurants, Inc. ("Food Is Fun") is an Indiana corporation whose principal place of business is Valparaiso, Indiana. Food Is Fun may be served by service at its registered address, 1084 Linwood Avenue, Valparaiso, Indiana 46375.

39.

Defendant Shamrock Management Group of Highland, LLC ("Shamrock Group of Highland") is an Indiana limited liability company whose principal place of business is Schererville, Indiana. Shamrock Group of Highland may be served by service at its registered address, 549 Kennedy Avenue, Schererville, Indiana 46375.

40.

Defendant Shamrock Management Group of Hobart, LLC ("Shamrock Group of Hobart") is an Indiana limited liability company whose principal place of business is Schererville, Indiana. Shamrock Group of Hobart may be served by service at its registered address, 549 Kennedy Avenue, Schererville, Indiana 46375.

41.

Defendant First BZE, LLC ("First BZE") is a Indiana limited liability company whose principal place of business is Schererville, Indiana. First BZE may be served by service at its registered address, 425 West Lincoln Highway, Schererville, Indiana 46375.

42.

Defendant Shamrock Management Group of Warsaw, Inc. ("Shamrock Group of Warsaw") is an Indiana limited liability company whose principal place of business is Warsaw, Indiana. Shamrock Group of Warsaw may be served by service at its registered address, 2521 Center Street, Warsaw, Indiana 46375.

43.

Defendant Shaffner and Shaffner Enterprises, Inc. ("Shaffner and Shaffner") is an Indiana corporation whose principal place of business is Warsaw, Indiana. Shaffner and Shaffner may be served by service at its registered address, 2519 East Center Street, Warsaw, Indiana 46580.

44.

Defendant Larry Briski is an Indiana resident who may be served at 2050 Anna Street, Schererville, Indiana 46375.

45.

Defendant James Hawk is an Indiana resident who may be served at 7535 Hawk Court, Schererville, Indiana 46375.

46.

Defendant James Wieser is an Indiana resident who may be served at 9 Hawthorne Place, Schererville, Indiana 46375.

47.

Defendant RSB Restaurants L.L.C. ("RSB Restaurants") is an Ohio limited liability company whose principal place of business is Gallipolis, Ohio. RSB Restaurants may be served by service upon its registered agent, Darren K. Clark, 412 Route 7, Gallipolis, Ohio 45631.

48.

Defendant Richard K. Rose is an individual resident of Ohio and may be served at 3229 Ingalls Road, Gallipolis, Ohio 45631.

49.

Defendant James M. Rose, Jr. is an individual resident of North Carolina and may be served at 353 Soundview Drive, Kill Devil Hills, North Carolina 27948.

50.

Defendant Primrose Food Services of California, Inc. ("Primrose Food Services") is a California corporation with its principal place of business in San Bernadino, California. Primrose Food Services may be served by service upon its registered agent, Saifuddin Ahmad, 3741 Merced Drive, Unit E, Riverside, California 92503.

51.

Defendant Saifuddin Ahmad is a California resident who may be served at 24 Vernon, Newport Coast, California, 92657.

52.

Defendant Alam Fazlul is a California resident who may be served at 25004 Wintergreen Court, Newhall, California, 91381.

53.

Defendant Khalid Mahmud is a California resident who may be served at 611 Sonoma Aisle, Irvine, California 92618.

54.

Defendant Saiful Islam is a California resident who may be served at 1502 S. 7th Street, Alhambra, California 91803.

55.

Defendant Triad Organizations Corp. ("Triad Organizations") is a Pennsylvania corporation with its registered agent located in Blue Bell, Pennsylvania. Triad Organizations may

be served by service at its registered address, 18 Sentry Parkway, Suite One, Blue Bell, Pennsylvania 19422-0.

56.

Defendant Joseph Gimaro, Sr. is a Pennsylvania resident who may be served at 672 Bethlehem Pike, Montgomeryville, Pennsylvania, 18936.

57.

Defendant Joseph Gimaro, Jr. is a Pennsylvania resident who may be served at 672 Bethlehem Pike, Montgomeryville, Pennsylvania 18936.

58.

Defendant Christopher Gimaro is a Pennsylvania resident who may be served at 672 Bethlehem Pike, Montgomeryville, Pennsylvania 18936.

59.

Defendant Ravi S. Godhia is a Texas resident who may be served at 11005 Robincreek Lane, Frisco, Texas 75035.

60.

Defendant Pinky Godhia is a Texas resident who may be served at 11005 Robincreek Lane, Frisco, Texas 75035.

61.

Defendant Pinnacle Limited Partnership ("Pinnacle") is an Illinois limited partnership whose principal place of business is located in Springfield, Illinois. Pinnacle may be served by service upon its registered agent, Stephen A. Tagge, Illinois Building 607 East Adams 800, Springfield, Illinois 62701.

62.

Defendant Benn-Birm, Inc. ("Benn-Birm") is a Pennsylvania corporation whose principal place of business 2835 Lehigh Street, Allentown, Pennsylvania 18103. Benn-Birm may be served by service at its registered address, 119 North High Street, West Chester, Pennsylvania 19380.

63.

Defendant George Zumbano is a Pennsylvania resident who may be served at 1000 Farm Lane, West Chester, Pennsylvania 19382.

64.

Defendant Samuel A. Cipollone, Jr. is a Pennsylvania resident who may be served at 430 Hilltop Road, Riegelsville, Pennsylvania 18077.

65.

Defendant Roger N. Huggins is a Pennsylvania resident who may be served at 443 Hidden River Road, Narberth, Pennsylvania 19072.

66.

Defendant Paul S. Hoffecker is a Pennsylvania resident who may be served at 989 Meadowview Lane, West Chester, Pennsylvania 19382.

67.

Defendant Great Lakes Hospitality Corp. ("Great Lakes Hospitality") is a Wisconsin corporation whose principal place of business is located in Fitchburg, Wisconsin. Great Lakes Hospitality may be served by service upon its registered agent, S&L Hospitality LLC, 2924 Marketplace Drive, #101, Fitchburg, Wisconsin 53719.

68.

Defendant Craig A. Stark is an individual resident of Wisconsin who may be served at N6282 Korth Highlands, Lake Mills, Wisconsin 53551.

69.

Defendant Marc Vaccarro is an individual resident of Wisconsin who may be served at 6359 Brandywood Trail, Sun Prairie, Wisconsin.

70.

Defendant Bruce Neviaser is an individual resident of Wisconsin who may be served at 4122 Mandan Crescent, Madison, Wisconsin 53711.

71.

Defendant Robert Stoehr is an individual resident of Wisconsin who may be served at 4145 Hiawatha Drive, Madison, Wisconsin 53711.

72.

Defendant Benn-Beth, Inc. ("Benn-Beth") is a Pennsylvania corporation whose principal place of business is Nazareth, Pennsylvania. Benn-Beth may be served by service at its registered address, 4621 Willow Lane, Nazareth, Pennsylvania 18060.

73.

Defendant Jamie J. Smith is an individual resident of Pennsylvania who may be served at 4621 Willow Lane, Nazareth, Pennsylvania 18060.

74.

Defendant Stephen F. Ferretti is an individual resident of Pennsylvania who may be served at 110 Oxford Drive, Easton, Pennsylvania 18045.

_____

75.

Defendant Grand Canyon, Ltd. ("Grand Canyon") is a Texas limited partnership with its principal place of business in Victoria, Texas.  Grand Canyon may be served by service by serving its registered agent, Chandler Buxani at 1201 E. Elizabeth Street, Brownsville, Texas 78520.

76.

Defendant Dr. Love Paul is an individual resident of Texas who may be served at 309 Woodlands Lane, Victoria, Texas 77904.

77.

Defendant Chander K. Buxani is an individual resident of Texas who may be served at 30 Creekbend Drive, Brownsville, Texas 78521 or 1201 E. Elizabeth Street, Brownsville, Texas 78520.

78.

Defendant Sterling Restaurant Management Group, LLC ("Sterling Restaurant") is a North Dakota limited liability company whose principal place of business is Fargo, North Dakota. Sterling Restaurant may be served by service upon its registered agent, Mutchler Bartram Architects, P.C., 505 Bdwy Suite 201, Fargo, North Dakota 58102-4836.

79.

Defendant John D. Dalen is an individual resident of Minnesota who may be served at 3710 S. 4th Street, Moorhead, Minnesota 56560.

80.

Defendant Kevin J. Bertram is an individual resident of North Dakota who may be served at 5059 MacKenzie Circle, Horace, North Dakota 58047.

81.

Defendant Steven M. Gehrtz is an individual resident of Minnesota who may be served at 3606 Westmoor Boulevard, Moorhead, Minnesota 56560.

82.

Defendant James Loomis is an individual resident of North Dakota who may be served at 2823 36th Avenue SW, Fargo, North Dakota 58104.

## JURISDICTION AND VENUE

83.

The court has jurisdiction over the lawsuit because certain claims arise under the Lanham Act for trademark infringement and unfair competition.  *See* 15 U.S.C. § 1114 and 1125.  The court has supplemental jurisdiction over Plaintiffs' other claims because they are so related to the claims within the court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

84.

Venue is proper in this District because most of the Defendants have agreed to venue and jurisdiction in this District in their Bennigan's Franchise Agreements.

## FACTUAL BACKGROUND

**A.      Sweet Onion Franchise Agreements.**

85.

On or about August 7, 1996, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Mt. Pleasant, Michigan.

86.

On or about November 3, 1998, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Okemos, Michigan.

87.

On or about November 3, 1998, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Flint, Michigan.

88.

On or about December 7, 1998, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Saginaw, Michigan.

89.

On or about December 7, 1998, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Midland, Michigan.

90.

On or about June 7, 2000, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Kalamazoo, Michigan.

91.

On or about August 15, 2000, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Portag, Michigan.

92.

On or about September 26, 2000, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Plymouth, Michigan.

93.

On or about September 26, 2000, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Ann Arbor, Michigan.

94.

On or about September 26, 2000, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Madison Heights, Michigan.

95.

On or about December 11, 2000, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Walker, Michigan.

96.

On or about March 31, 2002, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Big Rapids, Michigan.

97.

On or about February 17, 2003, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Lansing, Michigan.

98.

On or about March 4, 2004, Defendant Sweet Onion entered into a Franchise Agreement with Bennigan's to operate a Bennigan's restaurant in Howell, Michigan.

99.

As part of each of the Defendant Sweet Onion Franchise Agreements, Defendants Douglas LaBelle and Barton LaBelle agreed to be personally and individually bound by all of the terms and conditions of the Franchise Agreements.

100.

As part of each of the Defendant Sweet Onion Franchise Agreements, except Mt. Pleasant, Michigan, Defendant Pixie executed a guaranty agreement in favor of Bennigan's in which it (i) agreed to be personally and individually bound by all of the terms and conditions of the respective Defendant Sweet Onion Franchise Agreements, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions by Defendant Sweet Onion for the respective Defendant Sweet Onion Franchise Agreements.

101.

As part of the Mt. Pleasant, Michigan Franchise Agreement, Defendants Douglas Labelle and Barton LaBelle executed a guaranty agreement in favor of Bennigan's in which they (i) agreed to be bound by all of the terms and conditions of the Mt. Pleasant, Michigan Franchise Agreement, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions by Defendant Sweet Onion for the Mt. Pleasant, Michigan Franchise Agreement.

**B.      Kinseth Entities Franchise Agreements.**

102.

On or about January 24, 1996, Defendant Kinseth Hotel entered into a Franchise Agreement (the "Clear Lake, Iowa Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Clear Lake, Iowa.

103.

On or about April 20, 1997, Defendant Kinseth Hotel entered into a Franchise Agreement (the "Coralville, Iowa Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Coralville, Iowa.

104.

Defendants Bruce Kinseth, Leslie Kinseth, Linda Skinner and Gary Kinseth agreed to be personally and individually bound by the terms and conditions of the Clear Lake and Coralville, Iowa Franchise Agreements.

105.

As part of the Clear Lake and Coralville, Iowa Franchise Agreements, Defendants Bruce Kinseth, Leslie Kinseth, Linda Skinner and Gary Kinseth executed guaranty agreements in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all of the terms and conditions of the Clear Lake and Coralville, Iowa Franchise Agreements, and (ii) guarantied payment of all amounts and performance of the covenants, terms and conditions of Defendant Kinseth Hotel for the Clear Lake and Coralville, Iowa Franchise Agreements.

106.

On or about June 11, 1997, Defendant Kinseth Hospitality II entered into a Franchise Agreement (the "Urbandale, Iowa Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Urbandale, Iowa.

107.

Defendants Kinseth Hospitality and Bruce Kinseth agreed to be personally and individually bound by the terms and conditions of the Urbandale, Iowa Franchise Agreement.

108.

As part of the Urbandale, Iowa Franchise Agreement, Defendants Bruce Kinseth, Leslie Kinseth, Linda Skinner and Gary Kinseth executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all of the terms and conditions of the Urbandale, Iowa Franchise Agreement, and (ii) guarantied payment of all

amounts and performance of the covenants, terms and conditions of Defendant Kinseth Hospitality II for the Urbandale, Iowa Franchise Agreement.

109.

On or about March 3, 1998, Defendant Kinseth Hospitality III entered into a Franchise Agreement (the "Rock Island, Illinois Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Rock Island, Illinois.

110.

Defendants Kinseth Hospitality and Bruce Kinseth agreed to be bound by the terms and conditions of the Rock Island, Illinois Franchise Agreement.

111.

As part of the Defendant Rock Island, Illinois Franchise Agreement, Defendants Bruce Kinseth, Leslie Kinseth, Linda Skinner and Gary Kinseth executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all of the terms and conditions of the Rock Island, Illinois Franchise Agreement, and (ii) guarantied payment of all amounts and performance of the covenants, terms and conditions of Defendant Kinseth Hospitality III for the Rock Island, Illinois Franchise Agreement.

112.

On or about March 19, 1999, Defendant Peoria Hotel Associates entered into a Franchise Agreement (the "Peoria, Illinois Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Peoria, Illinois.

113.

Defendants Bruce Kinseth, Leslie Kinseth, Linda Skinner, Gary Kinseth and Allan Rose agreed to be personally and individually bound by the terms and conditions of the Peoria, Illinois Franchise Agreement.

114.

As part of the Peoria, Illinois Franchise Agreement, Defendants Bruce Kinseth, Leslie Kinseth, Linda Skinner, Gary Kinseth, and Allan Rose executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by al of the terms and conditions of the Peoria, Illinois Franchise Agreement, and (ii) guarantied payment of all amounts and performance of the covenants, terms and conditions of Defendant Peoria Hotel for the Peoria, Illinois Franchise Agreement.

115.

On or about November 29, 1999, Defendant Bettendorf Hotel entered into a Franchise Agreement (the "Bettendorf, Iowa Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Bettendorf, Iowa.

116.

Defendants Bruce Kinseth, Leslie Kinseth, Linda Skinner, Gary Kinseth and Allan Rose agreed to be personally and individually bound by the terms and conditions of the Bettendorf, Iowa Franchise Agreement.

117.

As part of the Bettendorf, Iowa Franchise Agreement, Defendants Bruce Kinseth, Leslie Kinseth, Linda Skinner, Gary Kinseth, and Allan Rose executed a personally guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all of

the terms and conditions of the Bettendorf, Iowa Franchise Agreement, and (ii) guarantied payment of all amounts and performance of the covenants, terms and conditions of Defendant Bettendorf Hotel for the Bettendorf, Iowa Franchise Agreement.

118.

On or about December 6, 2004, Defendant Columbia Hotel entered into a Franchise Agreement (the "Columbia, Missouri Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Columbia, Missouri.

119.

As part of the Columbia, Missouri Franchise Agreement, Defendants Bruce Kinseth, Leslie Kinseth, Linda Skinner and Gary Kinseth executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all terms and conditions of the Columbia, Missouri Franchise Agreement, and (ii) guarantied payment of all amounts and performance of the covenants, terms and conditions of Defendant Columbia Hotel for the Columbia, Missouri Franchise Agreement.

**C.     BOL Franchise Agreements.**

120.

On or about December 8, 1997, Defendant BOL entered into a Franchise Agreement (the "First Baton Rouge, Louisiana Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Baton Rouge, Louisiana.

121.

On or about December 8, 1997, Defendant BOL entered into a Franchise Agreement (the "Metarie, Louisiana Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Metarie, Louisiana.

122.

On or about December 8, 1997, Defendant BOL entered into a Franchise Agreement (the "Lafayette, Louisiana Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Lafayette, Louisiana.

123.

On or about December 8, 1997, Defendant BOL entered into a Franchise Agreement (the "New Orleans, Louisiana Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in New Orleans, Louisiana.

124.

On or about March 29, 2002, Defendant BOL entered into a Franchise Agreement (the "Memphis, Tennessee Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Memphis, Tennessee.

125.

On or about July 9, 1998, Defendant BOL entered into a Franchise Agreement (the "Second Baton Rouge, Louisiana Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Baton Rouge, Louisiana.

126.

On or about December 13, 2002, Defendant BOL entered into a Franchise Agreement (the "Lake Charles, Louisiana Franchise Agreement;" and all Franchise Agreements executed between BOL and Bennigan's and referenced herein, collectively, the "BOL Franchise Agreements") with Bennigan's to operate a Bennigan's restaurant in Lake Charles, Louisiana.

127.

Defendant Richard Pastorek agreed to be personally and individually bound by all of the terms and conditions of the BOL Franchise Agreements.

128.

Defendant Robin Delmer agreed to be personally and individually bound by the terms and conditions of the Memphis, Tennessee, Baton Rouge, Louisiana and Lake Charles, Louisiana Franchise Agreements.

**D.      Benni Franchise and License Agreements.**

129.

On or about March 21, 2001, Defendant Benni-5461 entered into a Franchise Agreement (the "Round Rock, Texas Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Round Rock, Texas.

130.

On or about March 20, 2001, Defendant Benni-5848 entered into a Franchise Agreement (the "First Austin, Texas Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Austin, Texas.

131.

Defendant Amer Hammoud agreed to be personally and individually bound by the terms and conditions of the Round Rock and Austin, Texas Franchise Agreements.

132.

As part of the Round Rock and First Austin, Texas Franchise Agreements, Defendant Amer Hammoud executed personal guaranty agreements in favor of Bennigan's in which he (i) agreed to be personally and individually bound by all of the terms and conditions of the Round

Rock and First Austin, Texas Franchise Agreements, and (ii) guarantied payment of all amounts and performance of the covenants, terms and conditions of Defendants Benni-5461 and Benni-5848 for the Round Rock and First Austin, Texas Franchise Agreements.

133.

On or about July 31, 2007, Defendant Benni-5462 entered into a Franchise Agreement (the "San Marcos, Texas Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in San Marcos, Texas.

134.

On or about February 18, 2005, Defendant Benni-5849 entered into a Franchise Agreement (the "Second Austin, Texas Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Austin, Texas.

135.

As part of the San Marcos and Second Austin, Texas Franchise Agreements, Defendant Amer Hammoud executed personal guaranty agreements in favor of Bennigan's in which he (i) agreed to be personally and individually bound by all of the terms and conditions of the San Marcos and Second Austin, Texas Franchise Agreements, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Defendants Benni-5462 and Benni-5849 for the Round Rock and First Austin, Texas Franchise Agreements.

136.

On or about September 16, 2008, Defendant Benni-5434 entered into an Interim License Agreement (the "License Agreement") with Bennigan's to operate a Bennigan's restaurant in Killeen, Texas.

**E.    JRJ Franchise Agreements.**

___

137.

On or about September 8, 2006, Defendant JRJ Restaurants entered into a Franchise Agreement (the "Kissimmee, Florida Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Kissimmee, Florida.

138.

On or about September 8, 2006, Defendant JRJ Restaurants entered into a Franchise Agreement (the "Lake Buena Vista, Florida Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Lake Buena Vista, Florida.

139.

As part of the Kissimmee and Lake Buena Vista, Florida Franchise Agreements, Defendants Tyrone Nabbie and Jihab Maali executed personal guaranty agreements in favor of Bennigan's in which they (i) agreed to be bound by all of the terms and conditions of the Kissimmee and Lake Buena Vista, Florida Franchise Agreements, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Defendant JRJ Restaurants for the Kissimmee and Lake Buena Vista, Florida Franchise Agreements.

F.     MVP Restaurants' Franchise Agreements.

140.

On or about December 3, 2004, Defendant MVP of Hot Springs entered into a Franchise Agreement (the "Hot Springs, Arkansas Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Hot Springs, Arkansas.

141.

As part of the Hot Springs, Arkansas Franchise Agreement, Defendant Dr. Vijay Patel executed a personal guaranty agreement in favor of Bennigan's in which he (i) agreed to be

personally and individually bound by all of the terms and conditions of the Hot Springs, Arkansas Franchise Agreement, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Defendant MVP of Hot Springs for the Hot Springs, Arkansas Franchise Agreement.

142.

On or about March 8, 2007, Defendant MVP of Little Rock entered into a Franchise Agreement (the "Little Rock, Arkansas Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in North Little Rock, Arkansas.

143.

As part of the Little Rock, Arkansas Franchise Agreement, Defendants Jagdish Patel, Vijay Patel, Anil Patel and Parth Patel executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all of the terms and conditions of the Little Rock, Arkansas Franchise Agreement, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Defendant MVP of Little Rock for the Little Rock, Arkansas Franchise Agreement.

**G.     Shamrock Entity Franchise Agreements.**

144.

On or about March 31, 2003, Defendant Shamrock Group of Gary entered into a Franchise Agreement (the "Gary, Indiana Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Gary, Indiana.

145.

Defendants Larry Briski and James Wieser agreed to be personally and individually bound by the terms and conditions of the Gary, Indiana Franchise Agreement.

146.

As part of the Gary, Indiana Franchise Agreement, Defendants Larry Briski and James Wieser executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all of the terms and conditions of the Gary, Indiana Franchise Agreement, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Defendant Shamrock Group of Gary for the Gary, Indiana Franchise Agreement.

147.

In connection with an October 2, 2006 Consent to Membership Change and Amendment Agreement for the Gary, Indiana Franchise Agreement, Defendant Briski executed a Guaranty and Assumption of Obligations Agreement.  As part of that Guaranty and Assumption of Obligations Agreement, Defendant Briski agreed to personally and unconditionally (i) guarantee to Bennigan's that Shamrock Group of Gary punctually pay and perform each and every undertaking, agreement and covenant set forth in the Gary, Indiana Franchise Agreement, and (ii) be bound by, and personally liable for the breach of each and every provision of the Gary, Indiana Franchise Agreement.

148.

On or about March 31, 2003, Defendant Food Is Fun entered into a Franchise Agreement (the "Angola, Indiana Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Angola, Indiana.

149.

Defendant Larry Briski agreed to be personally and individually bound by the terms and conditions of the Angola, Indiana Franchise Agreement.

150.

As part of the Angola, Indiana Franchise Agreement, Defendant Larry Briski executed a personal guaranty agreement in favor of Bennigan's in which he (i) agreed to be personally and individually bound by all of the terms and conditions of the Angola, Indiana Franchise Agreement, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Defendant Food Is Fun for the Angola, Indiana Franchise Agreement.

151.

On or about June 16, 1998, Ristorante Management Group, Inc. ("Ristorante Management") entered into a Franchise Agreement (the "Highland, Indiana Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Highland, Indiana.

152.

Defendants Larry Briski, James Wieser and James Hawk agreed to be personally and individually bound by the terms and conditions of the Highland, Indiana Franchise Agreement.

153.

As part of the Highland, Indiana Franchise Agreement, Defendants Larry Briski, James Wieser and James Hawk executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all of the terms and conditions of the Highland, Indiana Franchise Agreement, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Ristorante Management for the Highland, Indiana Franchise Agreement.

154.

On or about June 23, 2006, Bennigan's, Ristorante Management, and Defendant Shamrock Group of Highland entered into a Franchise Assignment and Consent Agreement with

respect to the Highland, Indiana Franchise Agreement.  Pursuant to the Franchise Assignment and Consent Agreement, (i) the Highland, Indiana Franchise Agreement was assigned to Defendant Shamrock Group of Highland, and (ii) Defendants Larry Briski, James Wieser and James Hawk (a) guaranteed Defendant Shamrock Group of Highland's performance of the Highland, Indiana Franchise Agreement, and (b) agreed to be personally and individually bound by all of the terms, both monetary and otherwise, under the Highland, Indiana Franchise Agreement.

155.

On or about November 3, 1998, Ristorante Management entered into a Franchise Agreement (the "Hobart, Indiana Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Hobart, Indiana.

156.

Defendants Larry Briski, James Wieser and James Hawk agreed to be personally and individually bound by the terms and conditions of the Hobart, Indiana Franchise Agreement.

157.

As part of the Hobart, Indiana Franchise Agreement, Defendants Larry Briski, James Wieser and James Hawk executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all of the terms and conditions of the Hobart, Indiana Franchise Agreement, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Ristorante Management for the Hobart, Indiana Franchise Agreement.

158.

On information and belief, the Hobart, Indiana Franchise Agreement was subsequently transferred and/or assigned by Ristorante Management to Defendant Shamrock Management Group of Hobart.

159.

On or about September 26, 2000, Defendant First BZE entered into a Franchise Agreement (the "Elkhart, Indiana Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Elkhart, Indiana.

160.

Defendants Larry Briski and James Wieser agreed to be personally and individually bound by the terms and conditions of the Elkhart, Indiana Franchise Agreement.

161.

As part of Elkhart, Indiana Franchise Agreement, Defendants Larry Briski and  James Wieser executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all of the terms and conditions of the Elkhart, Indiana Franchise Agreement, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Defendant First BZE for the Elkhart, Indiana Franchise Agreement.

162.

On or about November 3, 1998, Defendant Shamrock Group of Warsaw entered into a Franchise Agreement (the "Warsaw, Indiana Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Warsaw, Indiana.

163.

Defendants Larry Briski, James Wieser and Shamrock Group of Warsaw agreed to be personally and individually bound by the terms and conditions of the Warsaw, Indiana Franchise Agreement.

164.

As part of the Warsaw, Indiana Franchise Agreement, Defendants Larry Briski, and James Wieser executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all of the terms and conditions of the Warsaw, Indiana Franchise Agreement, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Defendant Shamrock Group of Warsaw under the Warsaw, Indiana Franchise Agreement.

165.

On or about September 4, 2007, Bennigan's, Defendant Shamrock Group of Warsaw and Shaffner and Shaffner entered into a Transfer and Amendment to the Franchise Agreement ("Transfer and Amendment").   As part of the Transfer and Amendment, Shamrock Group of Warsaw acknowledged and agreed to pay all amounts accrued, due and owing under the Warsaw, Indiana Franchise Agreement.  In connection with the Transfer and Amendment: (i) the November 3, 1998 Warsaw, Indiana Franchise Agreement was terminated; and (ii) Defendant Shaffner and Shaffner entered into a new Bennigan's Franchise Agreement for the Bennigan's in Warsaw, Indiana ("New Warsaw, Indiana Franchise Agreement").

166.

As part of the New Warsaw, Indiana Franchise Agreement, Defendants Bruce Shaffner and Steven Shaffner executed a personal guaranty agreement in favor of Bennigan's, pursuant to

which they personally and unconditionally (i) agreed to be personally and individually bound by all of the terms and conditions of the Warsaw, Indiana Franchise Agreement, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Shaffner and Shaffner under the New Warsaw, Indiana Franchise Agreement.

### H.    RSB Restaurants Franchise Agreements.

### 167.

On or about March 31, 2005, Defendant RSB Restaurants entered into a Franchise Agreement (the "Jackson, Ohio Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Jackson, Ohio.

### 168.

On or about March 24, 2006, Defendant RSB Restaurants entered into a Franchise Agreement (the "Athens, Ohio Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Athens, Ohio.

### 169.

On or about October 7, 2004, Defendant RSB Restaurants entered into a Franchise Agreement (the "Point Pleasant, West Virginia Franchise Agreement;" and all Franchise Agreements executed between and among RSB and Bennigan's and referenced herein, collectively, the "RSB Franchise Agreements")) with Bennigan's to operate a Bennigan's restaurant in Point Pleasant, West Virginia.

### 170.

Defendants Richard K. Rose and James M. Rose, Jr. agreed to be bound by the terms and conditions of the RSB Franchise Agreements.

171.

As part of the RSB Franchise Agreements, Defendants Richard K. Rose and James M. Rose, Jr. executed personal guaranty agreements in favor of Bennigan's in which they (i) agreed to be personally and individually bound by the terms and conditions of the RSB Franchise Agreements, and (ii) guarantied payment of all amounts and performance of the covenants, terms and conditions of Defendant RSB Restaurants for the RSB Franchise Agreements.

**I.      Remaining Defendants' Franchise Agreements.**

172.

On or about December 5, 2000, Defendant Primrose Food Services entered into a Franchise Agreement (the "San Diego, California Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in San Diego, California.

173.

Defendants Saifuddin Ahmad, Alam Fazlul, Khalid Mahmud and Saiful Islam agreed to be bound by the terms and conditions of the San Diego, California Franchise Agreement.

174.

As part of the San Diego, California Franchise Agreement, Defendants Saifuddin Ahmad, Alam Fazlul, Khalid Mahmud and Saiful Islam executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all of the terms and conditions of the San Diego, California Franchise Agreement, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Defendant Primrose Food Services under the San Diego, California Franchise Agreement.

175.

On or about June 1, 1998, Defendant Triad Organizations entered into a Franchise Agreement (the "Montgomery, Pennsylvania Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Montgomery, Pennsylvania.

176.

Defendants Joseph Gimaro, Sr., Joseph Gimaro, Jr. and Christopher Gimaro agreed to be bound by the terms and conditions of the Montgomery, Pennsylvania Franchise Agreement.

177.

On or about June 22, 2005, Defendants Ravi Godhia and Pinky Godhia entered into a Franchise Agreement (the "Las Colinas, Texas Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Las Colinas, Texas.

178.

On or about April 19, 2007, Defendant Pinnacle entered into a Franchise Agreement (the "Springfield, Illinois Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Springfield, Illinois.

179.

On or about November 26, 2001, Jemic Enterprises, Inc. entered into a Franchise Agreement (the "West Chester Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in West Chester, Pennsylvania.

180.

On or about May 14, 2002, Bennigan's, Jemic Enterprises, Inc., Defendant Benn-Birm and Defendants George Zumbano, Roger Huggins, Paul Hoffecker and Samuel Cipolloni, Jr. entered into a Franchise Assignment and Consent Agreement pursuant to which the West

Chester, Pennsylvania Franchise Agreement was assigned by Jemic Enterprises, Inc. to Defendant Benn-Birm.  In connection with the Franchise Assignment and Consent Agreement, Defendants George Zumbano, Roger Huggins, Paul Hoffecker and Samuel Cipolloni, Jr. entered into a Guaranty Agreement in favor of Bennigan's pursuant to which they (i) agreed to be personally and individually bound by all of the terms and conditions of the West Chester, Pennsylvania Franchise Agreement, and (ii) guarantied payment of all amounts and the performance of the covenants, terms and conditions of Defendant Benn-Birm under the West Chester, Pennsylvania Franchise Agreement.

181.

On or about April 9, 1997, Defendant Great Lakes Hospitality entered into a Franchise Agreement (the "Elgin, Illinois Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Elgin, Illinois.

182.

Defendants Craig A. Stark, Marc B. Vaccaro, Bruce D. Neviaser, and Robert H. Stoehr agreed to be personally and individually bound by the terms and conditions of the Elgin, Illinois Franchise Agreement.

183.

As part of the Elgin, Illinois Franchise Agreement, Defendants Craig A. Stark, Marc B. Vaccaro, Bruce D. Neviaser, and Robert H. Stoehr executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by the terms and conditions of the Elgin, Illinois Franchise Agreement, and (ii) guarantied payment of all amounts and performance of the covenants, terms and conditions of Defendant Great Lakes Hospitality for the Elgin, Illinois Franchise Agreement.

184.

On or about March 10, 2003, Defendant Benn-Beth, Inc. entered into a Franchise Agreement (the "Bethlehem, Pennsylvania Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Bethlehem, Pennsylvania.

185.

Defendants Jamie J. Smith and Stephen F. Ferretti agreed to be personally an individually bound by the terms and conditions of the Bethlehem, Pennsylvania Franchise Agreement.

186.

As part of the Bethlehem, Pennsylvania Franchise Agreement, Defendants Jamie J. Smith and Stephen F. Ferretti executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by the terms and conditions of the Bethlehem, Pennsylvania Franchise Agreement, and (ii) guarantied payment of all amounts and performance of the covenants, terms and conditions of Defendant Benn-Beth, Inc. for the Bethlehem, Pennsylvania Franchise Agreement.

187.

On or about October 1, 2001, Defendant Grand Canyon entered into a Franchise Agreement (the "Brownsville, Texas Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Brownsville, Texas.

188.

Defendants Dr. Love Paul and Chander K. Buxani agreed to be personally and individually bound by the terms and conditions of the Brownsville, Texas Franchise Agreement.

189.

As part of the Brownsville, Texas Franchise Agreement, Defendants Dr. Love Paul and Chander K. Buxani executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by all terms and conditions of the Brownsville, Texas Franchise Agreement, and (ii) guarantied payment of all amounts and performance of the covenants, terms and conditions of Defendant Grand Canyon for Brownsville, Texas Franchise Agreement.

190.

On or about July 14, 2000, Defendant Sterling Restaurant entered into a Franchise Agreement (the "Moorhead, Minnesota Franchise Agreement") with Bennigan's to operate a Bennigan's restaurant in Moorhead, Minnesota.

191.

Defendants John D. Dalen, Kevin J. Bertram, Steven M. Gehrtz, James Loomis agreed to be personally and individually bound by the terms and conditions of the Moorhead, Minnesota Franchise Agreement.

192.

As part of the Moorhead, Minnesota Franchise Agreement, Defendants John D. Dalen, Kevin J. Bertram, Steven M. Gehrtz, James Loomis executed a personal guaranty agreement in favor of Bennigan's in which they (i) agreed to be personally and individually bound by the terms and conditions of the Moorhead, Minnesota Franchise Agreement, and (ii) guarantied payment of all amounts and performance of the covenants, terms and conditions of Defendant Sterling under the Moorhead, Minnesota Franchise Agreement.

## DEFENDANTS' DEFECTIVE NOTICE OF DEFAULT

193.

The Defendants' respective Franchise Agreements provide that Defendants will not have the right to terminate the Franchise Agreement or to commence any action, lawsuit or proceeding against Bennigan's for breach of the Franchise Agreement or violation of any state, federal or local law (including alleged violations of franchise laws), unless and until:  (A) written notice by personal service or prepaid registered or certified mail setting forth the alleged breach or violation in detail has been delivered to Bennigan's by Defendant; and (B) [Bennigan's] fails to cure the alleged breach or violation within thirty (30) days after receipt of the written notice by personal service or prepaid registered or certified mail.

194.

On November 3, 2008, Mr. Peter Silverman, an attorney, sent a letter stating that he represented each of the franchisee Defendants under the respective Bennigan's Franchise Agreements noted above.  In that letter, Mr. Silverman stated that his clients asserted that Bennigan's was in material default of the Franchise Agreements in several respects, but the letter only specified five alleged defaults.  Mr. Silverman then stated that under the franchise termination provisions of the Defendants' Franchise Agreements, his clients demanded that Bennigan's cure the alleged breaches within 30 days of receipt of his letter.  A true and correct copy of the November 3, 2008 letter is attached hereto as Exhibit A and incorporated by reference herein.

195.

The November 3, 2008 letter was defective in several respects. Notably, it failed to comply with the notice of default provisions of the parties' respective Franchise Agreements.

The allegations in the letter were vague at best, and in fact, the letter failed to cite a single provision of any of the Franchise Agreements that was allegedly breached.  Rather than identify specific provisions of the Franchise Agreements, the letter alleged that Bennigan's somehow violated other unspecified documents.  The letter was so vague that it prevented Bennigan's from understanding much less attempting to cure any alleged material defaults.  Further, the letter demanded that Bennigan's cure the alleged material breaches by doing certain acts and paying the Defendants unspecified damages.  The respective Franchise Agreements do not permit the franchisee to demand any particular action to cure, nor do they permit the franchisees to demand damages as part of a cure.

196.

On November 19, 2008, Bennigan's, through its counsel, responded and stated among other things, that the Silverman letter was "not sent in a good faith effort to resolve any breaches under the parties respective [Franchise] Agreements."  Rather, it appeared that Mr. Silverman's letter "was purposefully drafted to prevent Bennigan's from even understanding the alleged breaches much less curing them."  A true and correct copy of the November 19, 2008 letter is attached hereto as Exhibit B and incorporated by reference herein.

**OPERATIVE PROVISIONS OF THE DEFENDANTS'
FRANCHISE AGREEMENTS**

197.

With some exceptions,[1] Defendants' Franchise Agreements provide that if a Defendant gives Bennigan's written notice of an alleged breach or violation of a Franchise Agreement or of any laws that give rise to a claim that the Defendant has the right to terminate a Franchise Agreement, then Bennigan's has "the absolute right to immediately commence legal action against [the Defendant] to enjoin and prevent the termination of th[e] [Franchise Agreement] by the [Defendant] without giving the [Defendant] any notice and without regard to any waiting period that may be contained in th[e] [Franchise Agreement]."

198.

Those Franchise Agreements further provide that if Bennigan's commences legal action, then Defendants "will not have the right to terminate [the Franchise Agreement] … unless and until a Court of competent jurisdiction has ruled on the merits that [Bennigan's] has breached [the Franchise Agreement] in the manner alleged by [Defendant]."  Moreover, even in that case, Defendants do not have the right to terminate the respective Bennigan's Franchise Agreements unless Bennigan's fails to begin the actions necessary to correct the breach or violation within thirty (30) days after the final judgment has been entered against Bennigan's and all times for appeals have expired.

---

[1]     This language is not contained in the following Bennigan's Franchise Agreements at issue: (i) San Marcos, Texas, (ii) Austin, Texas (Second Austin Franchise Agreement), (iii) Columbia, Missouri, (iv) Point Pleasant, West Virginia, (v) Jackson, Ohio, (vi) Athens, Ohio, (vii) Warsaw, Indiana, (viii) Las Colinas, Texas, (ix) Springfield, Illinois, (x) Hot Springs, Arkansas, (xi) Little Rock, Arkansas, (xii) Kissimmee, Florida, and (xiii) Lake Buena, Vista Florida.  However, the (i) San Marcos, Texas, (ii) Austin Texas (Second Austin Franchise Agreement), (iii) Point Pleasant, West Virginia, (iv) Jackson, Ohio, (v) Athens, Ohio, (vi) Hot Springs, Arkansas, and (vii) Little Rock, Arkansas Franchise Agreements have been terminated by Bennigan's.  Accordingly, whether those franchise agreements contain that language at this point in time is irrelevant.

199.

Pursuant to the terms of these Franchise Agreements, Bennigan's commences this lawsuit, thereby precluding and prohibiting Defendants from terminating any of those Franchise Agreements unless and until this Court rules that Bennigan's breached the Franchise Agreements in the exact manner alleged by Defendants, and then only if Bennigan's fails to begin the actions necessary to correct the breach or violation within thirty (30) days after a final judgment has been entered against Bennigan's and all time for appeals by Bennigan's has expired.

## COUNT ONE – INJUNCTIVE RELIEF—BREACH OF CONTRACT

### *(against Defendants)*

200.

Bennigan's incorporates the above paragraphs as if fully restated herein.

201.

Pursuant to the express terms of the parties Franchise Agreements, Defendants whose Franchise Agreements contain the clauses outlined above do not have a right to terminate the Franchise Agreements because this Court has not entered judgment that (i) Defendants provided proper notice of breaches of the Franchise Agreements; or (ii) Bennigan's materially breached the Franchise Agreements.

202.

Moreover, Defendants do not have a right to terminate any of the Franchise Agreements because (i) the notice of breach provided by the Defendants was improper and defective; and (ii) Bennigan's has not actually breached any material provision of the respective Franchise Agreements.

203.

Accordingly, Bennigan's is entitled to injunctive relief restraining and enjoining Defendants from terminating the Franchise Agreements unless and until this Court rules that (i) Defendants provided proper notice of alleged defaults, and (ii) Bennigan's breached the respective Franchise Agreements in the exact manner alleged by Defendants; and (iii) Bennigan's has failed to begin to cure the alleged defaults in the time period specified in the Franchise Agreements following such determinations.

## COUNT TWO – LANHAM ACT

### *(against Defendants)*

204.

Bennigan's incorporates the above paragraphs as if fully restated herein.

205.

Bennigan's has the exclusive right to license certain trademarks and service marks associated with Bennigan's Restaurants including the following federally registered trade and service marks:  Registration Nos. (i) 1,088,917; (ii) 2,914,348; (iii) 1,318,668; (iv) 1,979,644; and (v) 2,899,199 (collectively the "Bennigan's Marks").  As a result of advertising, sales, and promotion of items identified by the Bennigan's Marks, the public has come to know and recognize the "Bennigan's Marks and to associate them with Bennigan's locations and services offered by franchisees of Bennigan's.

206.

Each of the above registrations is in full force and effect and some of them have become incontestable pursuant to 15 U.S.C. § 1065.

207.

The Defendants' Franchise and License Agreements provide that Defendants have a limited license to use the Bennigan's Marks at their franchised restaurants provided the Defendants fully perform and comply with all of the conditions, terms and covenants in their respective Franchise Agreements.  In violation of the Lanham Act, the Defendants are using Bennigan's Marks in violation of their respective Franchise Agreements.

208.

Defendants are using Bennigan's Marks to operate and advertise their restaurants. However, Defendants are failing and refusing to pay the required license fees, which is required in order for Defendants to use Bennigan's Marks.  Defendants refusal to comply with the terms of their licenses while continuing to use Bennigan's Marks is unauthorized and improper under the Lanham Act.

209.

By letters dated November 10 and 12, 2008, Bennigan's notified Defendants BOL and Pastorek that they had failed to pay periodic fees required by the respective BOL Franchise Agreements, and requesting that they cure such breaches within ten (10) days after receipt of the notice or such longer period as required by applicable law.

210.

BOL and Pastorek did not cure or even attempt to cure any of their breaches.  In fact, they further breached each of the BOL Franchise Agreements by continuing not to pay the required fees due under the BOL Franchise Agreements.

211.

On January 12, 2009, Bennigan's sent BOL and Pastorek notices terminating all of the BOL Franchise Agreements.

212.

In violation of the Lanham Act, Defendants BOL and Pastorek continued using Bennigan's federally registered trade and service marks at their restaurants following the termination of the BOL Franchise Agreements.

213.

On November 10, 2008, Bennigan's sent Defendants Benni-5461, Benni-5848, Benni-5462, Benni-5849, and Amer Hammoud letters notifying them that they had failed to pay periodic fees required by their respective Bennigan's Franchise Agreements, and requesting that they cure such breaches within ten (10) days after receipt of the notices or such longer period as required by applicable law.

214.

Defendants Benni-5461, Benni-5848, Benni-5462, Benni-5849, and Amer Hammoud, did not cure or even attempt to cure any of their breaches.  In fact, they further breached their respective Bennigan's Franchise Agreements by continuing not to pay the required fees due under their respective Bennigan's Franchise Agreements.

215.

On January 12, 2009, Bennigan's sent Defendants Benni-5461, Benni-5848, Benni-5462, Benni-5849, and Amer Hammoud notices terminating each of their Bennigan's Franchise Agreements including the:  (i) Round Rock, Texas Franchise Agreement; (ii) First Austin, Texas,

Franchise Agreement; (iii) San Marcos, Texas Franchise Agreement; and (iv) Second Austin, Texas Franchise Agreement.

216.

Pursuant to its express terms, the License Agreement between Bennigan's and Defendant Benni-5434 expired on March 16, 2009.  Despite that expiration, Defendants Benni-5434 and Amer Hammoud continued to operate a Bennigan's restaurant in Killeen, Texas.

217.

On July 28, 2009, Bennigan's sent Defendants Benni-5434 and Amer Hammoud a letter reminding them that the License Agreement had expired, and requesting that they comply with their obligations, including among other things, ceasing operating the Killeen Restaurant as a Bennigan's.

218.

In violation of the Lanham Act, Defendants Benni-5461, Benni-5848, Benni-5462, Benni-5849,Benni-5434 and Amer Hammoud, continued using Bennigan's federally registered trade and service marks at their restaurants following the termination of their respective Bennigan's Franchise Agreements.

219.

Bennigan's has learned that Defendants Benni-5461 and Benni-5848 had discontinued the operation of their respective Bennigan's restaurants before receiving Bennigan's termination notices.  Although those restaurants had discontinued operations, Defendants Benni-5461 and Benni-5848 wrongfully continued to represent those restaurants as Bennigan's using Bennigan's federally registered trade and service marks.

_____

220.

On November 10, 2008, Bennigan's sent Defendants Triad Organizations, Joseph Gimaro, Sr., Joseph Gimaro, Jr., and Christopher Gimaro letters notifying them that they had failed to pay periodic fees required by their Bennigan's Montgomery, Pennsylvania Franchise Agreement, and requesting that they cure such breaches within ten (10) days after receipt of the notice or such longer period as required by applicable law.

221.

Defendant Triad Organizations, Joseph Gimaro, Sr., Joseph Gimaro, Jr., and Christopher Gimaro did not cure or even attempt to cure any of their breaches.  In fact, they further breached their Bennigan's Montgomery, Pennsylvania Franchise Agreement by continuing not to pay the required fees due pursuant to their Bennigan's Franchise Agreement.

222.

On January 12, 2009, Bennigan's sent Defendants Triad Organizations, Joseph Gimaro, Sr., Joseph Gimaro, Jr., and Christopher Gimaro notices terminating their Bennigan's Montgomery, Pennsylvania Franchise Agreement.

223.

In violation of the terms of the Lanham Act, Defendants Triad Organization, Joseph Gimaro, Sr., Joseph Gimaro, Jr., and Christopher Gimaro continued using Bennigan's federally registered trade and service marks at their restaurant following the termination of the Montgomery, Pennsylvania  Bennigan's Franchise Agreement.

224.

On November 10, 2008, Bennigan's sent Defendants Food Is Fun Restaurants, Shamrock Management Group of Highland, Shamrock Management Group of Hobart, First BZE, and their

respective guarantors and co-obligors, letters notifying them that they had failed to pay periodic fees required by their respective Bennigan's Franchise Agreements, and requesting that they cure such breaches within ten (10) days after receipt of the notice or such longer period as required by applicable law.

225.

Defendants Food Is Fun Restaurants, Shamrock Management Group of Highland, Shamrock Management Group of Hobart, First BZE, their respective guarantors and co-obligors did not cure or even attempt to cure any of their breaches.  In fact, they further breached their Bennigan's Franchise Agreements by continuing not to pay the required fees due under their respective Bennigan's Franchise Agreements.

226.

On January 12, 2009, Bennigan's sent Defendants Food Is Fun Restaurants, Shamrock Management Group of Highland, Shamrock Management Group of Hobart, First BZE, and their guarantors and co-obligors, letters notifying them that Bennigan's was terminating each of their respective Bennigan's Franchise Agreements, and that the termination would be effective automatically and without further notice ninety (90) days following their receipt or deemed receipt of the January 12, 2009 notice.

227.

Following receipt of the January 12, 2009 notices, Defendants Food Is Fun Restaurants, Shamrock Management Group of Highland, Shamrock Management Group of Hobart, and First BZE all indicated that they (i) did not intend to comply with their obligations under their respective Bennigan's License Agreements during the ninety (90) day period, and (ii) that they

intended to continue using Bennigan's federally registered trade and service marks until they are able to find a new brand for their restaurants in violation of the Lanham Act.

228.

In violation of the terms of the Lanham Act, Defendants Food Is Fun Restaurants, Shamrock Management Group of Highland, Shamrock Management Group of Hobart, First BZE and their respective guarantors continued using Bennigan's federally registered trade and service marks following the termination of their respective Franchise Agreements.

229.

On November 10, 2008, Bennigan's sent Defendant Shamrock Management Group of Gary and its respective guarantors and co-obligors, letters notifying them that they had failed to pay periodic fees required by their Bennigan's Franchise Agreement, and requesting that they cure such breaches within ten (10) days after receipt of the notice or such longer period as required by applicable law.

230.

Defendant Shamrock Management Group of Gary and its respective guarantors and co-obligors did not cure or even attempt to cure any of Shamrock Management Group of Gary's breaches.   In fact, Shamrock Management Group of Gary further breached its Bennigan's Franchise Agreement by continuing not to pay the required fees due under its Bennigan's Franchise Agreement.

231.

On February 6, 2009, Bennigan's sent Defendant Shamrock Management Group of Gary and its guarantors and co-obligors, letters notifying them that Bennigan's was terminating the Gary, Indiana Franchise Agreement.

232.

In violation of the terms of the Lanham Act, Defendants Shamrock Management Group of Gary and its respective guarantors continued using Bennigan's federally registered trade and service marks following the termination of the Gary, Indiana Franchise Agreement.

233.

On November 10, 2008, Bennigan's sent Defendant Great Lakes Hospitality and its respective guarantors and co-obligors, letters notifying them that they had failed to pay periodic fees required by their Bennigan's Franchise Agreement, and requesting that they cure such breaches within ten (10) days after receipt of the notice or such longer period as required by applicable law.

234.

Defendant Great Lakes Hospitality and its respective guarantors and co-obligors did not cure or even attempt to cure any of Great Lakes Hospitality's breaches.  In fact, Great Lakes Hospitality further breached its Bennigan's Franchise Agreement by continuing not to pay the required fees due under its Bennigan's Franchise Agreement.

235.

On February 6, 2009, Bennigan's sent Defendant Great Lakes Hospitality and its guarantors and co-obligors, letters notifying them that Bennigan's was terminating the Elgin, Illinois Franchise Agreement.

236.

In violation of the terms of the Lanham Act, Defendants Great Lakes Hospitality, Craig A. Stark, Marc B. Vaccaro, Bruce D. Neviaser and Robert H. Stoehr continued using Bennigan's

_____

federally registered trade and service marks at its restaurant following the termination of the Elgin, Illinois Franchise Agreement.

237.

On November 10, 2008, Bennigan's sent Defendant Grand Canyon and its respective guarantors and co-obligors, letters notifying them that they had failed to pay periodic fees required by their Bennigan's Franchise Agreement, and requesting that they cure such breaches within ten (10) days after receipt of the notice or such longer period as required by applicable law.

238.

Defendant Grand Canyon and its respective guarantors and co-obligors did not cure or even attempt to cure any of Grand Canyon's breaches.  In fact, Grand Canyon further breached its Bennigan's Franchise Agreement by continuing not to pay the required fees due under its Bennigan's Franchise Agreement.

239.

On February 23, 2009, Bennigan's sent Defendant Grand Canyon and its guarantors and co-obligors, letters notifying them that Bennigan's was terminating the Brownsville, Texas Franchise Agreement.

240.

In violation of the terms of the Lanham Act, Defendants Grand Canyon, Dr. Love Paul and Chandler Buxani continued using Bennigan's federally registered trade and service marks at its restaurant following the termination of the Brownsville, Texas Franchise Agreement.

241.

On November 10, 2008, Bennigan's sent Defendant Benn-Birm and its respective guarantors and co-obligors, letters notifying them that they had failed to pay periodic fees required by their Bennigan's Franchise Agreement, and requesting that they cure such breaches within ten (10) days after receipt of the notice or such longer period as required by applicable law.

242.

Defendant Benn-Birm and its respective guarantors and co-obligors did not cure or even attempt to cure any of Benn-Birm's breaches.  In fact, Defendant Benn-Birm further breached its Bennigan's Franchise Agreement by continuing not to pay the required fees due under its Bennigan's Franchise Agreement and by closing its Bennigan's restaurant without authorization.

243.

On February 6, 2009, Bennigan's sent Defendant Benn-Birm and its guarantors and co-obligors, letters notifying them that Bennigan's was terminating the West Chester Franchise Agreement.

244.

In violation of the terms of the Lanham Act, Defendants Benn-Birm, George Zumbano, Samuel A. Cipolloni, Jr, Robert N. Huggins and Paul S. Hoffecker continued using Bennigan's federally registered trade and service marks at its restaurant following the termination of the West Chester Franchise Agreement.

245.

On November 10, 2008, Bennigan's sent Defendant MVP of Hot Springs and its respective guarantors and co-obligors, letters notifying them that they had failed to pay periodic

fees required by their Bennigan's Franchise Agreement, and requesting that they cure such breaches within ten (10) days after receipt of the notice or such longer period as required by applicable law.

246.

Defendant MVP of Hot Springs and its respective guarantors and co-obligors did not cure or even attempt to cure any of MVP of Hot Springs's breaches.  In fact, MVP of Hot Springs further breached its Bennigan's Franchise Agreement by continuing not to pay the required fees due under its Bennigan's Franchise Agreement.

247.

On February 6, 2009, Bennigan's sent Defendant MVP of Hot Springs and its guarantors and co-obligors, letters notifying them that Bennigan's was terminating the Hot Springs, Arkansas Franchise Agreement.

248.

In violation of the terms of the Lanham Act, Defendants MVP of Hot Springs and Dr. Vijay Patel continued using Bennigan's federally registered trade and service marks at its restaurant following the termination of the Hot Springs, Arkansas Franchise Agreement.

249.

On November 10, 2008, Bennigan's sent Defendant MVP of Little Rock and its respective guarantors and co-obligors, letters notifying them that they had failed to pay periodic fees required by their Bennigan's Franchise Agreement, and requesting that they cure such breaches within ten (10) days after receipt of the notice or such longer period as required by applicable law.

250.

Defendant MVP of Little Rock and its respective guarantors and co-obligors did not cure or even attempt to cure any of MVP of Little Rock's breaches.  In fact, MVP of Little Rock further breached its Bennigan's Franchise Agreement by continuing not to pay the required fees due under its Bennigan's Franchise Agreement.

251.

On July 13, 2009, Bennigan's sent Defendant MVP of Little Rock and its guarantors and co-obligors, letters notifying them that Bennigan's was terminating the Little Rock, Arkansas Franchise Agreement.

252.

In violation of the terms of the Lanham Act, Defendants MVP of Little Rock and its guarantors, continued using Bennigan's federally registered trade and service marks at its restaurant following the termination of the Little Rock, Arkansas Franchise Agreement.

253.

By letters dated November 10 and 12, 2008, Bennigan's notified Defendants RSB Restaurants, Richard K. Rose and James M. Rose, Jr. that they had failed to pay periodic fees required by their respective RSB Franchise Agreements, and requesting that they cure such breaches within ten (10) days after receipt of the notice or such longer period as required by applicable law.

254.

RSB Restaurants, Richard K. Rose and James M. Rose, Jr. did not cure or even attempt to cure any of their breaches.  In fact, they further breached each of the RSB Franchise Agreements by continuing not to pay the required fees due under the RSB Franchise Agreements.

255.

On July 7, 2009, Bennigan's sent RSB Restaurants, Richard K. Rose and James M. Rose, Jr. notices terminating all of the RSB Franchise Agreements.

256.

In violation of the Lanham Act, Defendants RSB Restaurants, Richard K. Rose and James M. Rose, Jr. continued using Bennigan's federally registered trade and service marks following the termination of the RSB Franchise Agreements.

257.

Bennigan's has learned that Defendants Benn-Beth, Jamie Smith and Stephen Ferretti have discontinued operation of the Bennigan's in Bethlehem, Pennsylvania. Although the restaurant is still advertised using Bennigan's federally registered trade and service marks in numerous mediums, Defendants Benn-Beth, Jamie Smith and Stephen Ferretti are now operating a restaurant named Paddy's at the same location. Defendants Benn-Beth, Jamie Smith and Stephen Ferretti actions are in violation of the Lanham Act.

258.

Defendants are also threatening to violate the Lanham Act by wrongfully terminating their Franchise Agreements. If Defendants breach their obligations and terminate their respect Franchise Agreements and fail to discontinue using Bennigan's Marks, they will be in violation of the Lanham Act which prohibits former licensees from continuing to use federally registered trade and service marks following termination. Similarly, Defendants will be in violation of the Lanham Act if they wrongfully terminate their Franchise Agreements. The public has associated the Defendants' restaurants with Bennigan's Marks. Defendants' Restaurants are advertised in paper, on signage, on the internet, and in telephone books using Bennigan's Marks. The public

will continue to associate Defendants' restaurants with Bennigan's even after any wrongful termination.  Defendants' attempts to wrongfully usurp the benefits of Bennigan's Marks by wrongfully terminating the Franchise Agreements is prohibited by the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

259.

As a direct and proximate result of Defendants' conduct, Bennigan's is entitled to recover damages and enhanced damages for Defendants' willful infringement.

260.

Bennigan's is entitled to injunctive relief prohibiting Defendants and their officers, agents, servants, employees, attorneys and those persons in active concert or participation with Defendants who receive actual notice of the injunction, from violating the Lanham Act and from otherwise failing to comply with their obligations under the Franchise and License Agreements.

## COUNT THREE – DECLARATORY RELIEF

### *(against Defendants)*

261.

Plaintiffs incorporate the above paragraphs as if fully restated herein.

262.

There is an actual and justiciable controversy between the parties concerning:  (i) the validity of the notice of breach provided by the Defendants and whether it constituted proper notice under the respective Franchise Agreements; and (ii) assuming Defendants' notice was proper, whether Bennigan's actually breached a material provision term or condition of the respective Franchise Agreements; and (iii) assuming Defendants' notice was proper and

Bennigan's actually breached a material provision term or condition of the respective Franchise Agreements, how Bennigan's can cure the alleged material breaches.

263.

Accordingly, Plaintiffs seek a declaration that:  (i) the notice of breach provided by the Defendants was inadequate under the respective Franchise Agreements; (ii) Bennigan's did not breach any material provision term or condition of the respective Franchise Agreements; and (iii) assuming Defendants' notice was proper and Bennigan's actually breached a material provision term or condition of the respective Franchise Agreements, as to how Bennigan's can cure the alleged material breaches.

264.

In light of the foregoing, Plaintiffs seek a declaration that the Franchise Agreements remain in full force and effect and that Defendants have no right to terminate the Franchise Agreements unless and until this Court rules on Bennigan's request for declaratory judgment.

**COUNT FOUR – BREACH OF THE FRANCHISE AND LICENSE AGREEMENT**

**(against Defendants)**

265.

Plaintiffs incorporates the above paragraphs as if fully restated herein.

266.

The Franchise Agreements require Defendants to pay Bennigan's (or Bennigan's LLC after the assignment of assets) a Continuing or Royalty Fee calculated as a percentage of the gross revenues for their Bennigan's Restaurant.

267.

Defendants have failed to pay the Continuing or Royalty Fees to Plaintiffs in the time periods specified in their respective Franchise Agreements.  Accordingly, Defendants are liable for interest on the unpaid amounts calculated at the rate specified in the Defendants' Franchise Agreements.

268.

The Franchise Agreements require Defendants to pay Bennigan's (or Bennigan's LLC after the assignment of assets) a Production or Marketing Fee calculated as a percentage of the periodic gross revenues for the Restaurant.

269.

Defendants breached the Franchise Agreements and associated guaranty agreements by failing to pay all of the amounts owed to Plaintiffs pursuant to the express terms of the Defendants' Franchise Agreements.

270.

Defendants have also breached non-monetary obligations under the respective Franchise Agreements including failing to report operating statistics and unauthorized use of Bennigan's federally registered trade and service marks.

271.

If Defendants wrongfully terminate the Franchise Agreements, they will be liable to Bennigan's (or Bennigan's LLC) for all associated damages including, without limitation, lost Continuing or Royalty Fees and Production or Marketing Fees for the remainder of the term of the respective Franchise Agreements.

272.

Defendants are liable to Plaintiffs for their breaches of the Franchise Agreements and associated guaranty agreements in amounts to be determined at trial.

273.

Defendant Benni-5434 breached its obligations under the License Agreement, including, without limitation, its obligation to cease using Bennigan's federally registered trade and service marks upon expiration of the License Agreement.

274.

Defendant Benni-5434 is liable to Plaintiffs for their breaches of the License Agreement in an amount to be determined at trial.

275.

Certain Defendants have executed Promissory Notes in favor of Bennigan's (or Bennigan's LLC after the assignment of assets), but have failed and refused to pay all amounts owed under those respective Promissory Notes.  These Defendants are liable to Bennigan's (or Bennigan's LLC after the assignment of assets), for all amounts past-due under the Promissory Notes in an amount to be proven at trial.

## **COUNT FIVE – ATTORNEYS' FEES AND LITIGATION EXPENSES**

### **(against Defendants)**

276.

Plaintiffs incorporate the above paragraphs as if fully restated herein.

277.

Pursuant to terms of the respective Franchise Agreements, Defendants "will pay all attorneys' fees, costs and expenses incurred by [Bennigan's or Bennigan's LLC] in enforcing

any term, condition or provision of [the Franchise Agreement] or in enjoining any violation of the [Franchise Agreements] by [Defendants]."

278.

Pursuant to the terms of the License Agreement, Defendant Benni-5434 agreed that if Bennigan's was required to enforce the License Agreement in a judicial proceeding, Bennigan's "shall be entitled to reimbursement of its costs and expenses including, without limitation, reasonable attorneys' fees court costs and other litigation expenses, whether incurred prior to or in preparation of such judicial proceeding."

279.

Bennigan's and Bennigan's LLC are entitled to recover their attorneys' fees and costs pursuant to the Lanham Act.

280.

Bennigan's and Bennigan's LLC are entitled to recover their attorneys' fees and court costs pursuant to Ch. 38.001 *et seq* of the Texas Civil Practice and Remedies Code.

281.

Bennigan's and Bennigan's LLC are entitled to an award of its attorneys' fees and litigation expenses pursuant to the Franchise Agreements and associated guaranty agreements in an amount to be determined at trial.

## **SETTLEMENTS**

Since the filing of the Second Amended Complaint, Bennigan's has reached settlements with Defendants Kinseth Hotel Corporation, Kinseth Hospitality Company, Inc., Kinseth Hospitality II, L.C., Kinseth Hospitality III, L.C., Peoria Hotel Associates, LC., Bettendorf Hotel Associates, L.C., Columbia Hotel Associates, LLC, Bruce Kinseth, Gary Kinseth, Leslie

Kinseth, Linda Skinner, Allan Rose, Primrose Food Services of California, Inc., Saifuddin Ahmad, Alam Fazlul, Khalid Mahmud, Saiful Islam, Pinnacle Limited Partnership, The Sweet Onion, Inc, The Pixie Inc. Douglas Labelle, Barton Labelle, JRJ Restaurants Limited, Tyrone Nabbie, Jihad Maali, Great Lakes Hospitality Corp., Craig A. Stark, Marc Vaccarro, Bruce Neviaser, Robert Stoehr, Sterling Management Group, LLC, John D. Dalen, Kevin Bertram, Steven M Gehrtz, James Loomis, Ravi S. Godhia, Pinky Godhia, Shaffner and Shaffer Enterprises, Inc., Grand Canyon, Ltd., Dr. Love Paul and Chandler K. Buxani.  As a result of those settlements, Plaintiffs have dismissed those Defendants from this Action.

WHEREFORE, having fully stated its Fourth Amended Complaint against Defendants, Bennigan's respectfully prays as follows:

a)      pursuant to Count One of its Fourth Amended Complaint, that this Court enter injunctive relief restraining and enjoining Defendants from terminating the Franchise Agreements unless and until this Court rules that Plaintiffs breached the Franchise Agreements in the exact manner alleged by Defendants and Plaintiffs fail to cure any such breach;

b)      pursuant to Count Two of its Fourth Amended Complaint, that this Court enter injunctive relief prohibiting Defendants from violating the Lanham Act and award Bennigan's all appropriate damages;

c)      pursuant to Count Three of its Fourth Amended Complaint, that this Court declare that the Franchise Agreements remain in full force and effect and that Defendants have no right to terminate the Franchise Agreements unless and until this Court issues its declaratory judgment;

e)        pursuant to Court Four of its Fourth Amended Complaint, that this Court should award Plaintiffs all appropriate damages;

f)        pursuant to Count Five of its Fourth Amended Complaint, that this Court should award Plaintiffs its attorneys' fees and expenses of litigation; and

g)        that this Court should award such other and further relief as it deems just and proper under the circumstances.

Dated: May 28, 2010

      Respectfully submitted,


      */s/ Eric W. Pinker*
      Eric W. Pinker, P.C. (TSBN 16016550)
      Kent D. Krabill (TSBN 24060115)
      **LYNN TILLOTSON PINKER & COX, LLP**
      2100 Ross Avenue, Suite 2700
      Dallas, Texas  75201
      (214) 981-3800 Phone
      (214) 981-3839 Fax

      **COUNSEL FOR PLAINTIFFS**
      **BENNIGAN'S FRANCHISING COMPANY, LP**
      **BENNIGAN'S FRANCHISING COMPANY, LLC**


      **Of Counsel:**
      Jason S. Bell
      Georgia Bar No. 048530
      Pro Hac Vice
      John R. Autry
      Georgia Bar No. 029029
      Pro Hac Vice
      Smith, Gambrell & Russell, LLP
      Promenade II, Suite 3100
      1230 Peachtree Street, NE
      Atlanta, Georgia  30309-3592
      Telephone: 404-815-3500
      Facsimile: 404-815-3509
      jbell@sgrlaw.com
      jautry@sgrlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of May, 2010, I served the foregoing **PLAINTIFFS' FOURTH AMENDED COMPLAINT** by electronic filing a copy of same with the Court's electronic filing system which sends a notice of this filing to all parties who have appeared.  The parties may access this filing through the Court's system.

<u>/s/ Eric W.Pinker</u>
Eric W. Pinker, P.C. (TSBN 16016550)
Kent D. Krabill (TSBN 24060115)
**LYNN TILLOTSON PINKER & COX, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas  75201

<u>**Of Counsel**</u>:
Jason S. Bell
Georgia Bar No. 048530
Pro Hac Vice
John R. Autry
Georgia Bar No. 029029
Pro Hac Vice
Smith, Gambrell & Russell, LLP
Promenade II, Suite 3100
1230 Peachtree Street, NE
Atlanta, Georgia  30309-3592
Telephone: 404-815-3500
Facsimile: 404-815-3509
jbell@sgrlaw.com
jautry@sgrlaw.com

**COUNSEL FOR PLAINTIFFS
BENNIGAN'S FRANCHISING COMPANY, LP
BENNIGAN'S FRANCHISING COMPANY, LLC**